UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ELLIOT M. HIRSCH,

Plaintiff,

-*against*-

RABBI YITZCHAK YISRAELI, RABBI DAVID MASLATON, MICHELLE ABTAN AMSELLERN, MURRAY BETESH, LAURIE BEDA, JOEL BORENSTEIN, JAY R. BUTTERMAN, SHERRY CHERA HALABI, LAUREN DAG-MY, SARI DANA, MIRIAM ELISHEVA YARIMI, YESHIVA OF FLATBUSH JOEL BRAVERMAN HIGH SCHOOL LLC, THE EDMOND J. SAFRA SYNAGOGUE INC., MIRIAM SABZEHROO, RAQUEL SABZEHROO, EVE SCABA, DEBORAH SHILOACH, EVA SHAMMAH, NORMA TAWIL, HESHY TISCHLER, DALIA OZIEL, ADINA MILES, NOURITE MAIMON, SARAH MIZRACHI, ELIZABETH KAIREY, ISABELLA KHAIMOV, RABBI ELI J. MANSOUR, ABRAHAM MANOPLA, DR. MARK RAND, AMBER ADLER, RABBI HAROLD SUTTON, RABBI MAX SUTTON, YAFAH SUTTON, CITY OF NEW YORK, and JOHN AND JANE DOE 1-10 DEFENDANTS,

Defendants.

## DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS CERTAIN CLAIMS THE COMPLAINT

**MURIEL GOODE-TRUFANT**

*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y. 10007*

*Michael Futral*
*Tel: (212) 356-1643*

*September 8, 2025*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................ iii

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ............................................................................. 1

STANDARD OF REVIEW ............................................................................. 3

ARGUMENT

    POINT I

        ALL OF PLAINTIFF'S CLAIMS ARE TIME-
        BARRED AND MUST BE DISMISSED. ................................................ 4

        A.  Plaintiff's Federal Claims are Time-Barred. ...................................... 4

        B.  Plaintiff's State Law Claims are Time-Barrd and
            not in Compliance with New York's Notice of
            Claim Requirements ...................................................................... 6

            *1.*  *Plaintiff's IIED and Civil Assault Claims*
                *Are Time-Barred.*............................................................ 6

            *2.*  *Plaintiff's Civil Conspiracy Claim is Time-*
                *Barred.*............................................................................ 7

            *3.*  *Plaintiff did not Plead Compliance with New*
                 *York's Notice of Claim Requirements* ........................................... 8

    POINT II

        PLAINTIFF'S SECTION 1983 CLAIMS FAIL
        AND MUST BE DISMISSED ................................................................ 9

        A.  Plaintiff Fails to Plead a Selective Enforcement
            Claim.......................................................................................... 9

        B.  Plaintiff Fails to Plead a *Monell* Claim............................................. 12

    POINT III

        PLAINTIFF'S SECTION 1985 CONSPIRACY
        CLAIM MUST BE DISMISSED .......................................................... 13

POINT IV

    PLAINTIFF CANNOT MAINTAIN A SECTION
    1986 CLAIM ............................................................................................ 14

POINT V

    PLAINTIFF'S CIVIL ASSAULT CLAIM IS
    DEFICIENT AND MUST BE DISMISSED ............................................ 15

POINT VI

    PLAINTIFF FAILS TO STATE A CLAIM FOR
    INTENTIONAL INFLICTION OF EMOTIONAL
    DISTRESS .............................................................................................. 16

POINT VII

    PLAINTIFF'S CIVIL CONSPIRACY CLAIM IS
    DEFICIENT ............................................................................................ 18

POINT VIII

    PLAINTIFF'S COMPLAINT SHOULD BE
    DISMISSED WITHOUT LEAVE TO AMEND
    BECAUSE IT IS FRIVOLOUS AND DOES NOT
    SATISFY PLEADING STANDARDS UNDER
    RULE 8 ................................................................................................... 18

CONCLUSION ................................................................................................. 20

WORD COUNT CERTIFICATION ................................................................ 21

**Statutes**                                                              **Pages**

## TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

*20 Dogwood LLC v. Vill. of Roslyn Harbor,*
   No. 22-CV-4047 (ARR) (LGD), 2023 U.S. Dist. LEXIS 88142 (E.D.N.Y. May 19, 2023) .. 12

*25-86 41st St., LLC v. Guzman,*
   234 A.D.3d 649, 226 N.Y.S.3d 107 (2025) ................................................................. 18

*Agosto v. New York City Dep't of Educ.,*
   982 F.3d 86 (2d Cir. 2020) ....................................................................................... 12

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2008) ............................................................................................... 3, 4

*Bailey v. Tricolla,*
   94-CV-4597 (CPS), 1996 U.S. Dist. LEXIS 20067 (E.D.N.Y. 1996) ..................... 8

*Berlin v. JetBlue Airways Corp.,*
   436 F. Supp. 3d 550 (E.D.N.Y. 2020) ..................................................................... 7

*Birch v. City of New York,*
   675 F. App'x 43 (2d Cir. 2017) ............................................................................... 5

*Celli v. Cole,*
   699 F. App'x 88 (2d Cir. 2017) ............................................................................... 18

*Chukwuka v. City of New York,*
   No. 08 CV 2095 (RJD) (LB), 2010 U.S. Dist. LEXIS 98875 (E.D.N.Y. Sep. 17, 2010) ...... 16

*City of Cleburne v. Cleburne Living Ctr., Inc.,*
   473 U.S. 432 (1985) ................................................................................................ 9

*City of Los Angeles v. Heller,*
   475 U.S. 796 (1986) .......................................................................................... 12, 13

*Croke v. Cty. of Suffolk,*
   No. 19-CV-4124 (DLI) (PK), 2021 U.S. Dist. LEXIS 180276 (E.D.N.Y. Sept. 21, 2021) ..... 8

*Demosthene v. City of New York,*
   831 F. App'x 530 (2d Cir. 2020) ............................................................................ 13

*Demosthene v. City of New York,*
   2018 U.S. Dist. LEXIS 122909 (E.D.N.Y. July 20, 2018) ..................................... 15

*DeShaney v. Winnebago Cnty. Dep't of Social Servs.,*
   489 U.S. 189 (1989) ................................................................................................ 10

*Diarra v. City of New York*,
771 F. App'x 69 (2d Cir. 2019) .......................................................... 8

*Dolan v. Connolly*,
794 F.3d 290 (2d Cir. 2015) ............................................................. 14

*Dwares v. City of New York*,
985 F.2d 94 (2d Cir. 1993) ............................................................... 12

*Ekeoma v. City of New York, No. 23-CV-946*
(AMD) (LB), 2024 U.S. Dist. LEXIS 168560 (E.D.N.Y. Sep. 18, 2024) ...................... 12-13

*Farbstein v. Hicksville Public Library*,
323 F.Supp.2d 414 (E.D.N.Y.2004) ................................................. 5

*Felder v. Casey*,
487 U.S. 131 (1988) ....................................................................... 8

*Friedman v. Self Help Cmty. Servs., Inc.*,
647 F. App'x 44 (2d Cir. 2016) ........................................................ 16

*Geiss v. Weinstein Co. Holdings LLC*,
383 F. Supp. 3d 156 (S.D.N.Y. 2019) ................................................. 7

Gen. Mun. Law §§ 50-e, 50-i ............................................................. 8

*Greene v. City of New York*,
No. 08-CV-243 (AMD) (CLP), 2017 U.S. Dist. LEXIS 37243 (E.D.N.Y. Mar. 15, 2017) ..... 9

*Hagans v. Nassau Cty. Police Dep't*,
No. 18-CV-1918 (JS)(AYS), 2020 U.S. Dist. LEXIS 47090 (E.D.N.Y. Mar. 18, 2020) ........ 4

*Hardy v. New York City Health & Hosp. Corp.*,
164 F.3d 789 (2d Cir. 1999) ............................................................. 8

*Hogan v. Fischer*,
738 F.3d 509 (2d Cir. 2013) ............................................................. 5

*Hu v. City of New York*,
927 F.3d 81 (2d Cir. 2019) ............................................................... 10

*Jianjun Li v. Vill. of Saddle Rock*,
No. 20-CV-2289 (DRH) (ST), 2021 U.S. Dist. LEXIS 60705 (E.D.N.Y. Mar. 30, 2021) ...... 5

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006) ............................................................. 18

*L.K. v. Sewanhaka Cent. High Sch. Dist.*,
641 Fed. App'x 56 (2d Cir. 2016) ...................................................... 14

*McCullen v. Coakley*,
 573 U.S. 464 (2014) ........................................................... 12

*Melchner v. Town of Carmel*,
 No. 13 Civ. 8164 (VB), 2014 U.S. Dist. LEXIS 166247 (S.D.N.Y. Nov. 21, 2014) .............. 5

*Monell v. Dep't of Social Services of City of New York*,
 436 U.S. 658 (1978) ........................................................... 12

*Morris v. City of New York*,
 No. 14-CV-1749 (JG) (LB), 2015 U.S. Dist. LEXIS 54550 (E.D.N.Y. Apr. 27, 2015) ........ 11

*N.Y. State Citizens' Coal. For Child. v. Poole*,
 922 F.3d 69 (2d Cir. 2019) ................................................... 11

*Ormiston v. Nelson*,
 117 F.3d 69 (2d Cir. 1997) ................................................... 5

*Palmer v. City of New York*,
 564 F. Supp. 3d 221 (E.D.N.Y. 2021) ......................................... 8

*Pearl v. City of Long Beach*,
 296 F.3d 76 (2d Cir. 2002) ................................................... 5

*Rizk v. City of New York*,
 462 F. Supp. 3d 203 (E.D.N.Y. 2021) ......................................... 14

*Salahuddin v. Cuomo*,
 861 F.2d 40 (2d Cir. 1988) ................................................... 19

*Shue v. United States*,
 No. 10-CV-2501 (JS) (WDW), 2010 U.S. Dist. LEXIS 93440 (E.D.N.Y. Sep. 3, 2010) ........ 6

*Smith v. New York City Transit Auth.*,
 201 F.3d 432 (2d Cir. 1999) ................................................. 19

*Snyder v. Phelps*,
 562 U.S. 443 (2011) ...................................................... 16, 17

*Tardif v. City of New York*,
 991 F.3d 394 (2d Cir. 2021) ................................................. 15

*Cornejo v. Bell*,
 592 F.3d 121 (2d Cir. 2010) ................................................. 9

*Town of Castle Rock v. Gonzales*,
 545 U.S. 748 (2005) ......................................................... 11

*Turley v. ISG Lackawanna, Inc.*,
   774 F.3d 140 (2d Cir. 2014) ................................................ 16

*Washburn v. Kingsborough Cmty. Coll.*,
   No. 20-CV-00395 (DLI) (RLM), 2022 U.S. Dist. LEXIS 51086 (E.D.N.Y. Mar. 22, 2022) 18-19

*Wilson v. City of New York*,
   No. 18-CV-7301 (AMD)(LB) 2020 U.S. Dist. LEXIS 175790 (E.D.N.Y. Sept. 24, 2020) .. 13

*Wilson v. Garcia*,
   471 U.S. 261 (1985) ................................................ 4

*Zirvi v. Flatley*,
   433 F. Supp. 3d 448 (S.D.N.Y. 2020) ................................................ 7

## Constitutional Provisions

U.S. Const. amend. XIV, § 1 ................................................ 9

## Statutes

42 U.S.C. § 1983 ................................................ 1, 4, 5, 9, 12
42 U.S.C. § 1985 ................................................ *Passim*
42 U.S.C. § 1986 ................................................ 1, 4, 5, 6, 14
N.Y. Gen. Mun. Law § 50-e ................................................ 8
N.Y. Gen. Mun. Law § 50-i ................................................ 8

## Rules

Fed. R. Civ. P. 8 ................................................ 18, 19

## PRELIMINARY STATEMENT

In March 2021, Plaintiff Elliot M. Hirsch's refusal to issue a Get, a Jewish divorce document, to his wife, Defendant Elizabeth Kairey, prompted members of the Orthodox Jewish community to post on social media and organize public protests as part of the so-called "Free Elizabeth" campaign. On March 11, 2021, following public pressure, Plaintiff issued the Get to Ms. Kairey. Plaintiff now brings this action, challenging the Orthodox Jewish community's involvement in the "Free Elizabeth" campaign and Defendant City of New York's ("City") failure to stop or intervene in public protests. Each claim asserted against the City is legally unfounded and should be dismissed.

Defendant City moves to dismiss all claims against it in Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff asserts federal claims under 42 U.S.C. § 1983 for violations of civil rights, 42 U.S.C. § 1985(3) for conspiracy, and 42 U.S.C. § 1986 for failure to prevent or aid in preventing a conspiracy. Plaintiff also brings claims under New York law for intentional infliction of emotional distress ("IIED"), civil assault, and civil conspiracy.

The Complaint should be dismissed with prejudice on the grounds that: (1) all of Plaintiff's claims are time-barred; (2) Plaintiff did not plead compliance with New York's notice-of-claim statute; (3) Plaintiff's selective enforcement and *Monell* claims are deficient; (4) Plaintiff failed to sufficiently allege an injury or show that his property was damaged; (5) Plaintiff failed to state an underlying cause of action to support a conspiracy claim; and (6) Plaintiff's IIED is deficient.

## STATEMENT OF FACTS

On June 26, 2018, Plaintiff's wife, Defendant Kairey, filed for divorce. (Compl. ¶ 57). On March 8, 2021, after years of Plaintiff refusing to give his wife a Get, a Jewish divorce document, Defendant Kairey and others started a social media campaign, "Free Elizabeth," to pressure Plaintiff into giving her the document. (Compl. ¶¶ 51-53, 58).

The "Free Elizabeth" campaign was connected to a general "anti-Get" movement by members of the Orthodox Jewish community who oppose refusals to grant Gets and believe that such refusals are a form of coercion and abuse. (*See* Compl. ¶¶ 106-07, 295, 379). As part of the "anti-Get" movement, the "Free Elizabeth" campaign garnered endorsements and support from prominent religious leaders, public figures, social media influencers, and candidates running for political office. (*See* Compl. ¶¶ 131-32, 243, 285, 375). It was also "widely covered across social media and Orthodox Jewish community channels," and "featured in *Vogue Magazine*," and "[t]housands of people viewed and donated to the campaign." (*See* Compl. ¶¶ 129, 252, 348).

In connection with the "Free Elizabeth" campaign, three public protests were held. (Compl. ¶¶ 123, 126).[1] The first protest occurred on March 10, 2021, outside Plaintiff's home in Oakhurst, New Jersey. (Compl. ¶ 491). The second protest occurred on March 11, 2021, in Corporal Wiltshire Park in Brooklyn. (Compl. ¶ 117). During that protest, some attendees voiced disdain for Plaintiff and support for Defendant Kairey. (Compl. ¶ 132).

A third protest also occurred on March 11, 2021, "near Plaintiff's father's medical office and in proximity to Plaintiff's New York residence," where protesters displayed signs with hostile language. (Compl. ¶ 287). During that protest, NYPD officers from the 61st Precinct responded, placed "a patrol vehicle nearby," and allowed the protesters to continue. (Compl. ¶¶ 288, 291).[2]

---

[1] Plaintiff notes two other unrelated protests, which took place on March 9th and March 10th, 2021, in connection to another individual, Dibo Hafif, and his refusal to give his wife a Get. (Compl. ¶ 78). According to the Complaint, the New York City Police Department ("NYPD") responded to both of those protests but did not intervene. (Compl. ¶ 290).

[2] Plaintiff notes that "Community Affairs Officer Richie Taylor," who is "known for his ties to the Syrian Jewish community, was also invovled in managing communications" with protestors, but only in connection to the protests against Dibo Hafif, another target of "anti-Get" Protests. (Compl. ¶¶ 312-14).

On the evening of March 11, 2021, Plaintiff acceded to public pressure and gave Ms. Kairey the Get at a ceremony. (Compl. ¶ 60).

In 2021, Plaintiff filed "this case" in in the United States District Court for the District of New Jersey. (Compl. ¶ 11). On August 24, 2022, Plaintiff's case was transferred to the Eastern District of New York.[3] (Compl. ¶ 11). On April 25, 2023, this Court dismissed Plaintiff's 237-page, 819-paragraph second amended complaint for failure to comply with Rule 8 and directed Plaintiff to submit a third amended complaint that complies with Rule 8's "short and plain statement" requirement. (*See* Compl. ¶ 11).[4] On March 25, 2025 this Court dismissed Plaintiff's federal claims with prejudice.[5] On April 22, 2025, this Court dismissed all of Plaintiff's state law claims on jurisdictional grounds without prejudice.[6]

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*

---

[3] The new case number was 22-CV-5011. (*See* Compl. ¶ 11).

[4] *See also Elliott Hirsch v. Laurie Beda, et al.,* 22-CV-05011, ECF No. 152.

[5] *See Elliott Hirsch v. Laurie Beda, et al.,* 22-CV-05011, ECF No. 210.

[6] *See id.* ECF No. 212.

Two principles determine whether a complaint survives a motion to dismiss. First, the "tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. Rule Civ. Proc. 8(a)(2)).

## ARGUMENT

### POINT I

### ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED AND MUST BE DISMISSED

Plaintiff asserts both federal and state claims. His federal claims include alleged violations of 42 U.S.C. § 1983 for selective enforcement and municipal liability under *Monell*, as well as claims under 42 U.S.C. §§ 1985(3) and 1986. His state-law claims consist of civil assault, civil conspiracy, and intentional infliction of emotional distress. All of these claims are time-barred and must, therefore, be dismissed.

**A.     Plaintiff's Federal Claims are Time-Barred.**

"When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation." *Wilson v. Garcia*, 471 U.S. 261, 266-267 (1985). While Section 1986 explicitly sets forth a one-year limitations period, Sections 1983 and 1985 do not provide a limitation period. *See* 42 U.S.C. § 1986 (declaring that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued"); *Hagans v. Nassau Cty. Police Dep't*, No. 18-CV-1918 (JS)(AYS), 2020 U.S. Dist. LEXIS 47090, at *12 (E.D.N.Y. Mar. 18, 2020) (citations omitted).

For Section 1983 and 1985 claims, courts apply the statute of limitations under state law. *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir. 1997). In New York, the applicable statute of limitations for Section 1983 and 1985 claims stems from the "'general or residual state statute of limitations for personal injury actions,'" which is three years. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citations omitted); *see also Birch v. City of New York*, 675 F. App'x 43, 46 (2d Cir. 2017) (applying a three-year limitation to a *Monell* claim); *Jianjun Li v. Vill. of Saddle Rock*, No. 20-CV-2289 (DRH) (ST), 2021 U.S. Dist. LEXIS 60705, at *26 (E.D.N.Y. Mar. 30, 2021) (applying a three-year limitation to a Section 1985(3) claim); *Melchner v. Town of Carmel*, No. 13 Civ. 8164 (VB), 2014 U.S. Dist. LEXIS 166247, at *5 (S.D.N.Y. Nov. 21, 2014) (applying three-year statute of limitations to a selective enforcement claim).

Though state law provides the relevant limitations period, federal law "determines when a Section 1983 cause of action accrues." *Pearl*, 296 F.3d at 80. A selective enforcement claim brought under Section 1983 "accrues upon enforcement, *i.e.*, 'when the plaintiff knows or has reason to know of the harm.'" *Jianjun Li*, 2021 U.S. Dist. LEXIS 60705 at ** 4-5 (citations omitted). *Monell* claims do "'not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a [municipality's] 'policy or custom.'" *Birch v. City of New York*, 675 F. App'x 43, 45 (2d Cir. 2017) (citations omitted).

Section 1985 claims accrue at the time the Plaintiff became aware of the discriminatory decisions made by the alleged conspiracy. *Farbstein v. Hicksville Public Library,* 323 F.Supp.2d 414, 420 (E.D.N.Y.2004) (holding that a Section 1985 cause of action accrues when the plaintiff learns of the injury from each overt act upon which the claim is based). Section 1986 claims accrue

when the action of which the plaintiff complained occurred. *See Shue v. United States*, No. 10-CV-2501 (JS)(WDW), 2010 U.S. Dist. LEXIS 93440, at *10 (E.D.N.Y. Sep. 3, 2010) (citations omitted), *aff'd*, 466 F. App'x 51 (2d Cir. 2012).

Here, Plaintiff filed this action on May 14, 2025, concerning incidents that, to the extent they involve the City, occurred no later than March 11, 2021, the date of the most recent protest that Plaintiff alleges and the date in which Plaintiff gave Ms. Kairey the Get. Thus, under Section 1986, Plaintiff's claim became time-barred on March 11, 2022.

Plaintiff's *Monell*, selective enforcement, and Section 1985 conspiracy claims also accrued on March 11, 2021. According to Plaintiff, it was on March 11, 2021—at "approximately 8:15 PM"—that the alleged consequence of the City's purported pattern of non-enforcement occurred: Plaintiff was "coerced into performing a religious act—the issuance of a Get." (Compl. ¶ 298). Plaintiff expressly attributes this coercion to the "acts and omissions of … the New York City Police Department." (Compl. ¶ 298). Plaintiff also concedes that the protests preceding and culminating in him issuing Ms. Kairey the Get "reflect[ed] a pattern of inaction by NYPD—particularly by officers assigned to the 61st Precinct." (Compl. ¶ 292). Thus, on March 11, 2021, it was clear to Plaintiff, or should have been clear to him, that the alleged harmful act—the issuance of a Get—was the consequence of the NYPD's purported pattern of non-enforcement and thus when he was allegedly injured by the purported acts. Consequently, Plaintiff's *Monell*, selective enforcement, and Section 1985(3) claims accrued on March 11, 2021, and all became time-barred on March 11, 2024.

As a result, all of Plaintiff's federal law claims are time-barred and must be dismissed.

**B.** **Plaintiff's State Law Claims are Time-Barred and not in Compliance with New York's Notice of Claim Requirements.**

**1.** *Plaintiff's IIED and Civil Assault Claims are Time-Barred.*

Under New York law, a one-year statute of limitations applies to common law intentional tort claims, including IIED and assault. *See Berlin v. JetBlue Airways Corp.*, 436 F. Supp. 3d 550, 565 (E.D.N.Y. 2020) (citing C.P.L.R. § 215). IIED claims accrue "either at the time of the activity causing the distress or at the time of the last 'actionable act.'" *Id.* (citations omitted). Assault claims begin to run "from the date of the injury." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 171 (S.D.N.Y. 2019) (collecting cases).

Here, Plaintiff's allegations extend up to March 11, 2021. Thus, regardless of whether analyzed from the time the activity causing the alleged distress occurred or from the time of the last 'actionable act,' the statute of limitations expired for Plaintiff's IIED and assault claims at the latest on March 11, 2022. Thus, both claims are time-barred and must be dismissed.

**2.** *Plaintiff's Civil Conspiracy Claim is Time-Barred.*

Under New York law, "conspiracy is not an independent tort, and is time-barred when the substantive tort underlying it is time-barred." *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 461 n.6 (S.D.N.Y. 2020) (citations omitted). Thus, to the extent that Plaintiff's civil conspiracy claim rests on any or all of the underlying state law torts, it is subject to a one-year statute of limitations. *See id.* Further, a conspiracy claim accrues "at the same time that the underlying tort accrues." *Id.*

Here, like Plaintiff's intentional torts, the statute of limitations expired for Plaintiff's civil conspiracy claim on March 11, 2022. However, even assuming *arguendo* that Plaintiff's civil conspiracy claim rests on a claim subject to a three-year statute of limitations, it would still be time-barred. Thus, Plaintiff's civil conspiracy claim fails and must be dismissed.

### 3. *Plaintiff did not Plead Compliance with New York's Notice of Claim Requirements.*

"Under New York law, a notice of claim is a condition precedent" to bringing an action in state or federal court against a municipality. *See* Gen. Mun. Law §§ 50-e, 50-i(1)(a); *Diarra v. City of New York*, 771 F. App'x 69, 71 (2d Cir. 2019); *see also Felder v. Casey*, 487 U.S. 131, 151 (1988). New York's notice-of-claim statute requires that plaintiffs asserting state tort claims against a municipality must, *inter alia*, "file a notice of claim within 90 days of the incident that gives rise to the claim." *Palmer v. City of New York*, 564 F. Supp. 3d 221, 241 (E.D.N.Y. 2021) (citing New York Gen. Mun. Law §§ 50-e and 50-i). Additionally, under "Section 50-i, a plaintiff is required to affirmatively plead in his complaint that he has filed a notice of claim, and that such notice was served at least 30 days prior to commencement of the action." *Id.* (citations omitted).

Notice of claim requirements are "construed strictly" by both state and federal courts. *See Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999); *Croke v. Cty. of Suffolk*, No. 19-CV-4124 (DLI) (PK), 2021 U.S. Dist. LEXIS 180276, at *23 (E.D.N.Y. Sept. 21, 2021). "'Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.'" *Palmer*, 564 F. Supp. 3d at 241 (citing *Diarra*, 771 F. App'x at 71); *see also Bailey v. Tricolla*, 94-CV-4597 (CPS), 1996 U.S. Dist. LEXIS 20067 (E.D.N.Y. 1996) (dismissing plaintiff's state claims for failure to comply with the notice of claim requirements). "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." *Id.* (citations omitted).

Here, Plaintiff's Complaint does not allege that he filed a notice of claim or that he served a notice of claim on the City at any time prior to commencing this suit. Thus, because Plaintiff has not complied with New York's notice-of-claim requirements, his state law claims for IIED, civil assault, and civil conspiracy fail and must be dismissed.

## POINT II

## PLAINTIFF'S SECTION 1983 CLAIMS FAIL
## AND MUST BE DISMISSED

Assuming *arguendo* that Plaintiff's Section 1983 claims are not time-barred, they still fail because they are without merit. Section 1983 requires that a plaintiff show that the alleged harm was "committed by a person acting under the color of state law," and the action "deprived [him] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Plaintiff asserts two claims pursuant to Section 1983—selective enforcement and municipal liability under *Monell*—and alleges that City, acting through the NYPD, failed to disperse protests that occurred at a public park and near his home,[7] violating his First and Fourteenth Amendment rights. (*See* Compl. ¶ 289). Both claims fail and must be dismissed.

### A. Plaintiff Fails to Plead a Selective Enforcement Claim.

The Equal Protection Clause of the Fourteenth Amendment provides, in relevant part, that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This provision is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To state a claim under the Equal Protection Clause, "'a plaintiff must allege that a government actor intentionally discriminated against him on the basis of'" impermissible considerations. *Greene v. City of New York*, No. 08-CV-243 (AMD) (CLP), 2017 U.S. Dist. LEXIS 37243, at *86-87 (E.D.N.Y. Mar. 15, 2017) (quoting *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000)), *aff'd*, 742 F. App'x 532 (2d Cir. 2018) (summary order).

---

[7] Plaintiff's inclusion of the protest outside his home in New Jersey is starkly inapposite to the City and the NYPD.

A plaintiff may establish an equal protection violation based on a claim of selective enforcement by "prov[ing] that (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019).

Here, Plaintiff fails to show that he was denied equal protection of the law, that he was selectively treated, or that any selective treatment was motivated by an intent to discriminate. For instance, Plaintiff alleges that the City, acting through the NYPD, did not disperse the "anti-Get" protestors because of the NYPD's "tolerance" and "preferential treatment for protestors affiliated with the Syrian Jewish community." (Compl. ¶ 295). This conclusory allegation fails for a number of reasons, including because Plaintiff does not allege that the police knew him, his ethnic or religious background, or that police were aware of the reasons for the protests—all of which are necessary to make out his claim. As Plaintiff makes clear, the only protests that happened in New York City were the March 11th protests at a public park in Brooklyn and the other "near [his] father's medical office" and his "New York residence." (Compl. ¶¶ 117, 132). Further, even if Plaintiff's allegations are true, the NYPD's "tolerance" of one Jewish sect does not imply an intention to discriminate against another sect.

Moreover, the Fourteenth Amendment does not require a state to "protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.,* 489 U.S. 189, 195, 197 (1989) ("As a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of" the Fourteenth Amendment.). Likewise, "police officers have no … general duty to provide public

service or protection to individual citizens." *Morris v. City of New York*, No. 14-CV-1749 (JG) (LB), 2015 U.S. Dist. LEXIS 54550, at *13 (E.D.N.Y. Apr. 27, 2015); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 766, 768 (2005) (holding no entitlement to police action where not explicitly created). Here, Plaintiff has not alleged that the NYPD affirmatively placed him in danger or had any special duty to him. In fact, as Plaintiff concedes, the NYPD responded to protests, evaluated the situations, and placed patrol cars nearby. (*See* Compl. ¶¶ 288, 291).

Further, Plaintiff's allegation of the NYPD failing to intervene in an incident where there was "substantial property damage" occurring in connection with a protest outside the house of another individual, Dibo Hafif, is unavailing. (*See* Compl. ¶ 294). Indeed, Plaintiff has not established that he has standing to litigate any alleged constitutional violations on behalf of a third party. *See e.g., N.Y. State Citizens' Coal. For Child. v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019) (noting bar on third-party standing may be overcome where plaintiff demonstrates a close relationship to the injured party and a barrier to the injured party's ability to assert its interests).[8] Nor has he plausibly alleged that his rights were harmed or violated by a protest outside Dibo Hafif's house or by any damage that occurred there. (*See* Compl. ¶ 351).

Plaintiff's conclusory allegation that his rights were violated by the NYPD's ties to a Jewish neighborhood patrol group also lacks merit. (*See* Compl. ¶ 295). In particular, Plaintiff's allegation that the NYPD's purported "preferential treatment for protestors affiliated with the Syrian Jewish community" somehow illustrates the NYPD's "deliberate indifference and selective enforcement" is conclusory and speculative at best, and fails to show intentional discrimination. (*See* Compl. ¶¶ 295, 299). This is particularly true given that protests in public fora, such as parks and sidewalks, "occupy a 'special position in terms of First Amendment protection' because of

---

[8] Plaintiff also notes that Dibo Hafif has filed his own civil suit. (*See* Compl. ¶ 355).

their historical role as sites for discussion and debate." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014). Thus, if anything, it is likely that the NYPD was simply refraining from interfering with protestors' First Amendment rights. As such, Plaintiff's alleged harm is insufficient and implausible. Thus, because Plaintiff fails to allege an injury sufficient for bringing a claim under Section 1983 and fails to plausibly allege intentional discrimination, Plaintiff's selective enforcement claim must be dismissed.

**B.      Plaintiff Fails to Plead a *Monell* Claim.**

A plaintiff asserting a Section 1983 claim against a municipality pursuant to *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978), must allege three elements: "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020); *see also Monell*, 436 U.S. at 691.

In general, plaintiffs can demonstrate a municipal policy or custom through allegations regarding "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *20 Dogwood LLC v. Vill. of Roslyn Harbor*, No. 22-CV-4047 (ARR) (LGD), 2023 U.S. Dist. LEXIS 88142, at *22 (E.D.N.Y. May 19, 2023) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)), *aff'd*, No. 23-CV-00930, 2024 U.S. App. LEXIS 8832 (2d Cir. Apr. 12, 2024). However, conclusory allegations that a municipality has a custom or policy that caused a constitutional violation are insufficient and warrant dismissal. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

Further, there can be no municipal liability without an underlying constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The non-action of police officers does not constitute a constitutional violation that satisfies the third element under a *Monell* claim. *See Ekeoma v. City of New York*, No. 23-CV-946 (AMD) (LB), 2024 U.S. Dist. LEXIS 168560, at *31

(E.D.N.Y. Sep. 18, 2024) ("A police officer's failure to take a report or to investigate are not actionable."); *Wilson v. City of New York*, No. 18-CV-7301 (AMD)(LB), 2020 U.S. Dist. LEXIS 175790, at *12 (E.D.N.Y. Sept. 24, 2020) (noting that police officers "have discretion to . . . initiate arrests, and are charged with acting for the benefit of the public, not private citizens.").

Here, even if Plaintiff's *Monell* claim was not time-barred, it would still fail for several reasons. First, Plaintiff's allegation that the City's "policies, customs, and practices—including its deference" to a neighborhood patrol group and its "failure to enforce the law equally—directly contributed to [his] constitutional injuries" is conclusory and fails to identify a specific policy. (*See* Compl. ¶ 268).

Moreover, Plaintiff's claim also fails as he alleges that his rights were purportedly violated by the non-action, or non-enforcement, of the NYPD. *See* Compl. ¶¶ 295, 298; *see also Heller*, 475 U.S. at 799 (finding that where an individual police officer "inflicted no constitutional injury . . . it is inconceivable" that the municipality could be liable for the individual police officer's actions); *Demosthene v. City of New York*, 831 F. App'x 530, 534 n.3 (2d Cir. 2020) ("[I]n light of the absence of an underlying constitutional violation, the district court correctly dismissed the claim against the City pursuant to *Monell*."). Thus, because Plaintiff fails to identify a specific policy or plausibly allege an underlying deprivation of his constitutional rights, his *Monell* claim fails and must be dismissed.

## POINT III

### PLAINTIFF'S SECTION 1985 CONSPIRACY CLAIM MUST BE DISMISSED

Section 1985 creates a private cause of action, allowing plaintiffs to bring claims for conspiracies to interfere with an individual's constitutional rights. Section 1985 creates a cause of action for conspiracies that are "motivated by some racial or perhaps otherwise class-based,

invidious discriminatory animus." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). In order to state a claim under Section 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Id.*

Here, even if Plaintiff's Section 1985(3) claim was not time-barred, it would still fail for at least two reasons. First, as explained, *supra* Point II.A, Plaintiff has not plausibly alleged discrimination by the City. Second, Plaintiff's Section 1985(3) claim also fails because his Complaint does not allege that "his" person or property was injured, but only the property of others.[9] As such, Plaintiff's Section 1985(3) conspiracy claim must be dismissed.

## POINT IV

### PLAINTIFF CANNOT MAINTAIN A SECTION 1986 CLAIM

A claim under Section 1986 is "necessarily predicated" on a Section 1985(3) claim. *See L.K. v. Sewanhaka Cent. High Sch. Dist.*, 641 Fed. App'x 56, 59 (2d Cir. 2016) (citing *Brown v. City of Oneonta*, 221 F.3d 329, 334 (2d Cir. 2000)). As such, a claim under Section 1986 "for failure to prevent the violation of a person's civil rights may not exist absent a viable Section 1985 claim." *Rizk v. City of New York*, 462 F. Supp. 3d 203, 227 (E.D.N.Y. 2021) (citation and internal quotation marks omitted). Here, because Plaintiff fails to state a cause of action under Section 1985(3), his Section 1986 claim also fails and must be dismissed.

---

[9] *See* Compl. ¶¶ 312, 351 (describing "damage to property" outside Dibo Hafif's home).

## PLAINTIFF'S CIVIL ASSAULT CLAIM IS DEFICIENT AND MUST BE DISMISSED

Under New York law, civil assault "is an intentional placing of another person in fear of imminent harmful or offensive contact." *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021). A plaintiff may hold a municipality vicariously liable for the actions of its officers in committing a state tort claim of civil assault under a theory of *respondeat superior*. *See Demosthene v. City of New York*, 2018 U.S. Dist. LEXIS 122909, at *40 (E.D.N.Y. July 20, 2018) (citations omitted), *aff'd*, 831 F. App'x 530 (2d Cir. 2020). To do so, a plaintiff must assert his civil assault claim against an individual officer, *id.* (citations omitted), and "demonstrate that the defendant officer's conduct 'was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties,'" *Tardif*, 991 F.3d at 410 (quoting *Nimely v. City of New York*, 414 F.3d 381, 391 (2d Cir. 2005)).

Here, even if Plaintiff's civil assault claim was not time-barred, it would still fail for at least two reasons. First, Plaintiff's claim fails because he has not alleged any claims against an individual officer.

Second, Plaintiff's civil assault claim also fails because he does not plausibly allege that any officer intentionally placed him in fear of imminent harmful contact or that any officer acted unreasonably. His assertion that "Community Affairs Officer Richie Taylor, known for his ties to the Syrian Jewish community, was also involved in managing communications with protestors" at a separate protest targeting Dibo Hafif, "but took no effective steps to deter the escalating threats" does not plausibly suggest any intent to cause Plaintiff apprehension of imminent contact. (*See* Compl. ¶ 314). At most, it amounts to a criticism of alleged ineffectiveness in crowd management, not affirmative conduct intended to threaten or intimidate Plaintiff.

Thus, Plaintiff's state law claim for civil assault fails and must be dismissed.

**POINT VI**

**PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

To state a claim for IIED under New York law, "a plaintiff must plausibly allege (i) extreme and outrageous conduct, (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (iii) a causal connection between the conduct and the injury, and (iv) severe emotional distress." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157-58 (2d Cir. 2014).

"The first element sets a high bar to relief, requiring 'extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.'" *Friedman v. Self Help Cmty. Servs., Inc.*, 647 F. App'x 44, 47 (2d Cir. 2016) (quoting *Turley*, 774 F.3d at 157). An IIED claim is "highly disfavored" under New York law and "is to be invoked only as a last resort." *Turley*, 774 F.3d at 158. Moreover, "New York courts routinely hold that IIED claims against government agencies, including New York City, are barred for public policy reasons." *Chukwuka v. City of New York*, No. 08 CV 2095 (RJD) (LB), 2010 U.S. Dist. LEXIS 98875, at *27 (E.D.N.Y. Sep. 17, 2010) (citations omitted).

"The Free Speech Clause of the First Amendment—'Congress shall make no law ... abridging the freedom of speech'—can serve as a defense in state tort suits, including suits for intentional infliction of emotional distress." *Snyder v. Phelps*, 562 U.S. 443, 451 (2011). Whether the Free Speech Clause of the First Amendment bars a plaintiff's IIED claim turns on "whether that speech is of public or private concern, as determined by all the circumstances of the case." *Id.* (citations omitted). Speech is a matter of public concern "when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,'" or "when it 'is a

16

subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Id.* at 453.

Here, even if Plaintiff's IIED claim were not time-barred, it would still fail for at least three reasons. First, because Plaintiff brings his IIED claim against the City, it is barred as a matter of public policy.

Second, Plaintiff also fails to plausibly allege the requisite extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society. Plaintiff's allegation that the City's actions "were extreme and outrageous, intolerable in any civilized community, and intended to break [him] emotionally, psychologically, and spiritually," is conclusory and without any factual support. (*See* Compl. ¶ 401).

Third, by Plaintiff's own account, the March 2021 protests were a matter of public concern. They were part of a "public campaign" that was endorsed by prominent religious leaders, public figures, social media influencers, and candidates running for political office, was "widely covered across social media and Orthodox Jewish community channels," included "[t]housands of online" interactions and donations, and was also "featured in *Vogue Magazine*." (*See* Compl. ¶¶ 129, 131-32, 243, 252-54, 285, 348, 375, 417). Although Plaintiff may have found the content of protesters' speech repugnant, that alone is insufficient to overcome the Free Speech Clause of the First Amendment, or constitute the type of extreme and outrageous conduct that would be intolerable in a civilized society. *See Snyder*, 562 U.S. at 458 (upholding reversal of Circuit Court's denial of damages for an IIED claim and explaining that, "in public debate, [we] must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment.").

Therefore, Plaintiff's IIED claim fails and must be dismissed.

## POINT VII

## PLAINTIFF'S CIVIL CONSPIRACY CLAIM IS DEFICIENT

"[T]o properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." *25-86 41st St., LLC v. Guzman*, 234 A.D.3d 649, 650, 226 N.Y.S.3d 107, 110 (2025) (citations omitted). "New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citations omitted). As a result, where a plaintiff "fails to state causes of action for [any] of the torts underlying the alleged conspiracy, ... [the plaintiff] necessarily fails to state an actionable claim for civil conspiracy." *Id.* Here, Plaintiff's civil conspiracy claim fails because he has not adequately stated a cause of action that could support his civil conspiracy claim. Thus, Plaintiff's claim must be dismissed.

## POINT VIII

## PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND BECAUSE IT IS FRIVOLOUS AND DOES NOT SATISFY PLEADING STANDARDS UNDER RULE 8

Under the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'When a complaint fails to comply with [the Rule 8] requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint.'" *Celli v. Cole*, 699 F. App'x 88, 89 (2d Cir. 2017) (citations omitted). Courts in this Circuit have routinely dismissed a plaintiff's complaint for failure to comply with Rule 8 requirements due to excessive length and prolixity. *See e.g.,*

*Washburn v. Kingsborough Cmty. Coll.*, No. 20-cv-00395 (DLI)(RLM), 2022 U.S. Dist. LEXIS 51086, at *7 (E.D.N.Y. Mar. 22, 2022) (collecting cases).

Courts in this Circuit will deny a plaintiff leave to amend his complaint following dismissal on Rule 8 grounds where the plaintiff's complaint is "frivolous." *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (collecting cases). "A complaint is frivolous if it lacks an arguable basis in law or fact," and "may be dismissed" where "it is clear from the face of the complaint that the claim is time-barred." *Smith v. New York City Transit Auth.*, 201 F.3d 432 (2d Cir. 1999) (citations omitted).

Here, Plaintiff's failure to comply with Rule 8 warrants dismissal because his Complaint—which is 110 pages long and contains 518 paragraphs—is a labyrinth of prolixity. Moreover, as Plaintiff himself indicates, this is not the first time he has failed to comply with Rule 8. (Compl. ¶ 11). Additionally, Plaintiff should not be given leave to amend his Complaint because, as explained in Point I, *supra*, his claims against the City are time-barred, and thus frivolous.

Thus, Plaintiff's Complaint should be dismissed without leave to amend.

## CONCLUSION

For the foregoing reasons, Defendant City respectfully requests that this Court dismiss the

Complaint with prejudice, and order any other and further relief that it deems just and proper.

Dated: New York, New York
September 08, 2025

                    **MURIEL GOODE-TRUFANT**
                    Corporation Counsel of the City of New York
                    *Attorney for Defendants City of New York*
                    100 Church Street
                    New York, New York 10007
                    T: (212) 356-1643

        By:    *Michael Futral  /s/*
                    Michael Futral, Esq.
                    *Assistant Corporation Counsel*
                    Special Federal Litigation

Cc:    Elliot M. Hirsch
       7 Saxony Drive
       Oakhurst, NJ 07755
       *Pro se Plaintiff*

**<u>CERTIFICATION</u>**

In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 5,911. I have relied on the word count function of Microsoft Word to prepare this certification.

Dated: New York, New York
      September 08, 2025

                        **MURIEL GOODE-TRUFANT**
                        Corporation Counsel of the City of New York
                        *Attorney for Defendants City of New York, Planeta,*
                              *Bolger, and Moscoso.*
                        100 Church Street
                        New York, New York 10007
                        T: (212) 356-1643

           By:    *Michael Futral  /s/*
                 Michael Futral, Esq.
                 *Assistant Corporation Counsel*
                 Special Federal Litigation

Cc:    Elliot M. Hirsch
       7 Saxony Drive
       Oakhurst, NJ 07755
       *Pro se Plaintiff*