| AGF&J Abrams, Gorelick, Friedman & Jacobson, LLP Attorneys At Law | One Battery Park Plaza 4th Floor New York, NY 10004 | Phone: 212-422-1200 Fax: 212-968-7573 www.agfjlaw.com |

November 17, 2025

The Honorable Eric Komitee
United States District Judge
United States District Court,
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:   *Hirsch v. Rabbi Yitzchak Yisraeli et al*
                Civil Action No. 1:25-cv-02757-EK-VMS
                Our File: 32816

Dear Judge Komitee:

      I represent defendants The Edmond J. Safra Synagogue, Inc. ("the Synagogue") and Rabbi Eli J. Mansour ("Rabbi Mansour") in the above referenced matter. For the reasons set forth below, I intend to move to dismiss the instant action pursuant to FRCP R. 12(b)(6) on the grounds that plaintiff fails to state any claim upon which relief can be granted. This letter constitutes my request for a pre-motion conference with the Court in accordance with Sec. III B of Your Honor's Individual Rules And Practices In Civil Cases. Because the complaint is inordinately long and contains a multiplicity of alleged causes of action, and because the defenses to the RICO causes of action are so complicated and multifaceted, I have been unable to stay within the three page limit for letters of this type. I ask the Court to grant leave for this letter to exceed the limit by two substantive pages and a signature page.

      In this action plaintiff sues 34 named defendants and 10 John/Jane Does for allegedly orchestrating a vocal campaign to persuade him to give his (now former) wife a Jewish divorce document known as a Get. Plaintiff accuses the defendants (*inter alia*) of mounting two physical protest demonstrations and maintaining a website where he was defamed and emotionally harmed. Plaintiff also sues on the grounds that the defendants' efforts violated civil RICO laws.

      In June 2021, plaintiff brought a lawsuit against many of the current defendants that was almost identical to the instant action ("the First Action"). By Order dated March 25, 2025 ("the Prior Order"), Judge Komitee granted a motion in the First Action made by certain defendants pursuant to FRCP R. 12(b)(6) to the extent of dismissing plaintiff's causes of action for civil RICO and RICO conspiracy. Amongst other things, the Prior Order stated: "Hirsch may not amend his RICO claims, which shall be dismissed with prejudice."

      In the instant action, plaintiff, in contravention of the Prior Order, has both amended, and reasserted the RICO claims set forth in the First Action against both Rabbi Mansour and the Synagogue and other defendants. Because the two RICO causes of action here involve the same

**AGF&J** Abrams, Gorelick, Friedman & Jacobson, LLP
Attorneys At Law

Hon. Eric Komitee
November 17, 2025
Page 2

defendants, are virtually identical to those in the First Action, and were already dismissed with prejudice, and because this very Court directed in the Prior Order that plaintiff may not amend the RICO claims, the current RICO based causes of action must be dismissed with prejudice. *See, Jude v. City of New York*, 2018 U.S. Dist. LEXIS 146498 (S.D.N.Y. 2018); *Witchard v. Montefiore Med. Ctr.*, 2007 U.S. Dist. LEXIS 31694, 2007 WL 1284066 (S.D.N.Y. 2007); *Mudholkar v. Univ. of Rochester*, 2006 U.S. Dist. LEXIS 69502, 2006 WL 2792281 (W.D.N.Y. 2006)

  Plaintiff's present RICO allegations also substantively fail to state causes of action for many reasons. I will deal with only some of them in this letter. A RICO cause of action must properly allege the existence of an enterprise. While "association in fact" enterprises can be broadly constituted, even they must still show evidence of an ongoing organization, formal or informal, and evidence that their various associates function as a continuing unit. *See, First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 2004 U.S. App. LEXIS 20302 (2d Cir. 2004). In the instant complaint, there is no structure to the alleged enterprise at all. There may have been a group of like-minded individuals doing similar things, but there was no formal or informal organization whatsoever and no functioning "continuing unit," as required by *First Capital Asset Mgmt.*, cited *supra*." There was simply a website or protest demonstrations that individuals could access/attend, or not, as they pleased. They did not have to report to anyone, there were no rules, there were no meetings, anyone could post or protest using whatever words they wanted; in short, there was no structure to this alleged enterprise at all. The behavior plaintiff complains of will not suffice to establish any type of RICO enterprise. *See, Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 2001 U.S. Dist. LEXIS 13451 (S.D.N.Y 2001)

  Moreover, a RICO enterprise "must have a structure distinct from the pattern of racketeering activity in which its members engage. ... 'The enterprise is not the 'pattern of racketeering;' it is an entity separate and apart from the pattern of activity in which it engages.'" *New York v. UPS, Inc.*, 2016 U.S. Dist. LEXIS 105038 (S.D.N.Y. 2016). The enterprise must also be separate from the participants in the enterprise. *Paul Hobbs Imps. Inc. v. Verity Wines LLC*, 2023 U.S. Dist. LEXIS 12184, 2023 WL 374120 (S.D.N.Y. 2023). Plaintiff alleges no facts that illustrate that the alleged RICO enterprise here has any existence beyond the collective activities and identities of those who made the internet posts or attended the protests.

  As already noted, the allegations of the present complaint are not materially different from those asserted in the First Action (e.g. the duration of the free Elizabeth campaign is still alleged to be a "seven-day period in March 2021" (Instant Complaint ¶4), although it was actually only four days, since the period allegedly started on March 8, 2021 (Instant Complaint ¶51) and ended on March 11, 2021 when plaintiff gave his wife a Get (Instant Complaint ¶55)). The allegations being the same, it follows that the bases for the dismissal of the RICO causes of action in the First Action apply to the present action as well. For example, Plaintiff again fails to show a continuing pattern of racketeering activity (Prior Order, pages 4 to 8 and precedents cited there) since the duration of the activity remains incredibly short and, as in the First Action, there was no longer a threat of continuing criminal activity beyond the date when plaintiff gave his wife a Get. These

Case 1:25-cv-02757-EK-VMS   Document 72   Filed 11/17/25   Page 3 of 6 PageID #: 355

AGF&J | Abrams, Gorelick, Friedman & Jacobson, LLP
Attorneys At Law

Hon. Eric Komitee
November 17, 2025
Page 3

factors show that plaintiff cannot establish either open-ended or close-ended continuity (Prior Order pages 6 to 8 and precedents cited there). It is clear that the defendants' activities did not meet the time frame for close ended continuity, and where, as here, the alleged scheme is inherently terminable, there can be no open ended continuity. *See, Purchase Real Estate Group, Inc. v. Jones*, 2010 U.S. Dist. LEXIS 87571, 2010 WL 3377504 (S.D.N.Y. 2010)

There is no pattern of racketeering activity here for another reason. The free Elizabeth campaign had one goal: To persuade plaintiff to give his wife a Get. No matter how many alleged predicate acts there allegedly were, there is no RICO pattern of activity if such acts are committed to gain only a single objective. *Bandari v. QED Connect, Inc.*, 2025 U.S. Dist. LEXIS 169570, 2025 LX 386975 (S.D.N.Y. 2025). Similarly, as noted in the Prior Order (page 7) "'RICO caselaw disfavors finding continuity where the alleged scheme targeted few victims . . . and is inherently terminable.'" (Citing to *Black v. Ganieva*, 619 F. Supp. 3d 309, 2022 U.S. Dist. LEXIS 116239 (S.D.N.Y. 2022).) There is only one putative victim in the instant complaint – plaintiff. As the Second Circuit held in *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 2008 U.S. App. LEXIS 5691 (2d Cir. 2008), "Here … the amended complaint alleges only 'a serious, but discrete and relatively short-lived scheme to defraud a handful of victims,' which is insufficient to establish open-ended continuity.

It is black letter law that each alleged RICO participant must engage in two predicate acts. *Paul Hobbs Imps. Inc.* cited, *supra*. Plaintiff has not met this burden in the instant complaint. Rabbi Mansour's supposed participation in the enterprise was limited, according to the instant complaint, to giving his imprimatur to the website. He was not at the protests and made no posts on the website. The alleged Get celebration, even if this can reasonably be construed as threatening to plaintiff (which it cannot), occurred after plaintiff gave his wife a Get (Instant Complaint ¶79), which is to say, after the enterprise had achieved its singular goal and was over and done. It is the same situation with the Synagogue. At worst, the Synagogue lent its name to the website with regard to fund raising. It made no statements threatening plaintiff or contributing to any form of extortion or intimidation. It should also be remembered that in order to prove that the fund raising was fraudulent, plaintiff must plead that Rabbi Mansour and the Synagogue intended to defraud plaintiff. Such allegations are missing from the instant complaint. Additionally, although plaintiff alleges that certain statements on the website were fraudulent, he does not allege that the rabbi and the Synagogue knew they were so, or how they could have known it. These deficiencies are fatal to a cause of action for fraud. *Paul Hobbs Imps. Inc.* cited, *supra*.

Plaintiff alleges a RICO conspiracy. This too must fail. In the first place, where the pleader, like plaintiff here, has failed to make out a substantive RICO violation, there can be no conspiracy to commit one. *See, Nasik Breeding & Research Farm Ltd.*, cited *supra*.

This Court lacks subject matter jurisdiction of the instant case because its adjudication will force the Court and any jury in the matter to become entangled in a thicket of questions concerning arcane religious issues and practices. The Court and jury will have to immerse themselves in

Jewish religious law and learn concepts and doctrines wholly of a religious nature in order to understand, much less decide, this matter. This will violate the Constitution's Establishment Clause. *See, Kraft v. Rector, Churchwardens & Vestry of Grace Church*, 2004 U.S. Dist. LEXIS 4234, 2004 WL 540327 (S.D.N.Y. 2004) Throughout the instant complaint, plaintiff refers to Jewish religious concepts and makes it clear that many of his allegations against defendants cannot be understood and are not effective unless the trier of fact has a good grounding in Jewish religious law. Some examples include the following: Plaintiff bases his conversion cause of action and (in part) his 42 USC 1986 conspiracy cause of action on the allegation that he gave his wife a Get under duress (Instant Complaint ¶¶ 4, 5, 331 to 334, 422 to 428). This is entirely a Jewish religious concept. The duress needed to invalidate a Get is a complex religious question, debated in rabbinic literature for thousands of years. Plaintiff cannot show what it means to give a Get under duress unless he puts before the fact finder centuries of Jewish religious jurisprudence. But it is not only plaintiff's causes of action that require the trier of fact to undergo an extensive religious education. To prove their defenses, defendants will have to explain religious concepts too. Even if plaintiff does not do it, defendants will have to show through religious literature that the duress plaintiff claims is insufficient to invalidate the Get. In order to defend themselves from plaintiff's charges of defamation and infliction of emotional distress, defendants will have to show in detail and through religious literature or rabbinic expert witnesses that a woman cannot remarry without a Get and that withholding one is, indeed, a form of abuse and not defamation; and that accusing plaintiff of being an abuser in this context is an accurate description of the situation which does not qualify as infliction of emotional harm. It will also have to be shown, through nuanced religious arguments, that a Get is not the husband's property, contrary to what plaintiff claims in his conversion cause of action. Courts may not entangle themselves in these types of religious controversies and the certainty that religious law will play a crucial role in both the prosecution and defense of the instant matter necessitates its dismissal. *Abdelhak v. Jewish Press Inc.*, 411 N.J. Super. 211, 985 A.2d 197, 2009 N.J. Super. LEXIS 263 (N.J. Super. Ct. App. Div. 2009)). (Although it is a New Jersey state court precedent which is not binding on the Court, the reasoning of the decision is extremely persuasive.) and *Sieger v. Union of Orthodox Rabbis of the U.S. & Can., Inc.*, 1 A.D.3d 180, 767 N.Y.S.2d 78, 2003 N.Y. App. Div. LEXIS 11936 (1st Dept. 2003); app. dism., 2 N.Y.3d 758, 811 N.E.2d 35, 2004 N.Y. LEXIS 658, 778 N.Y.S.2d 773 (2004); lv. app. den., 3 N.Y.3d 604, 817 N.E.2d 825, 2004 N.Y. LEXIS 2128, 784 N.Y.S.2d 7 (2004). *See, Klagsbrun v. Va'ad Harabonim*, 53 F. Supp. 2d 732, 1999 U.S. Dist. LEXIS 9408 (D.N.J. 1999); aff'd, 263 F.3d 158, 2001 U.S. App. LEXIS 15648 (3d Cir. 2001). *See, Drake v Moulton Mem. Baptist Church of Newburgh*, 93 A.D.3d 685, 940 N.Y.S.2d 281, 2012 N.Y. App. Div. LEXIS 1771, 2012 WL 833211 (2d Dept. 2012).

As a matter of law, neither Rabbi Mansour nor the Synagogue is responsible for inflicting emotional distress on plaintiff, either intentionally or negligently, or for defamation. Plaintiff does not allege any actual statements made by my clients that defamed him or caused him emotional distress. At worst, plaintiff claims that the rabbi and the Synagogue are sort of vicariously liable for the nasty statements made by others on the website and other social media. Such remote liability is not actionable, even if the rabbi and the Synagogue were connected with the website

and the free Elizabeth campaign (which is denied). *See,* 47 USC §230; *Shiamili v Real Estate Group of N.Y., Inc.,* 17 N.Y.3d 281, 952 N.E.2d 1011, 929 N.Y.S.2d 19, 2011 N.Y. LEXIS 1452, 2011 WL 2313818 (2011). Moreover, many of the alleged statements were made on social media sites that even plaintiff does not claim the rabbi and the Synagogue had anything to do with.

Causes of action for intentional and negligent infliction of emotional distress, "must allege conduct that was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . . and [was] utterly intolerable in a civilized community.'" *Benjamin v Assad,* 186 A.D.3d 549, 129 N.Y.S.3d 126, 2020 N.Y. App. Div. LEXIS 4596 (2d Dept. 2020) and *Matthews v. Malkus,* 377 F. Supp. 2d 350, 2005 U.S. Dist. LEXIS 14401(S.D.N.Y. 2005). The New York Court of Appeals adds that a defendant's alleged conduct must "be regarded as atrocious" and that all of these requirements are "rigorous, and difficult to satisfy." *Chanko v American Broadcasting Cos. Inc.,* 27 N.Y.3d 46, 49 N.E.3d 1171, 29 N.Y.S.3d 879, 2016 N.Y. LEXIS 702 (2016). This crucial outrageous conduct element of the causes of action is the "most susceptible to a determination as a matter of law—which is designed to filter out petty complaints and assure that the emotional distress is genuine." *Id.* A defendant's conduct may be inappropriate, irresponsible, offensive, even reprehensible, but that does not mean that it satisfies the standard for outrageousness. *Id* and *Harville v. Lowville Cent. Sch. Dist.,* 245 A.D.2d 1106, 667 N.Y.S.2d 175, 1997 N.Y. App. Div. LEXIS 13902 (4th Dept. 1997); *lv. app. den.,* 92 N.Y.2d 808, 1998 N.Y. LEXIS 2856, 678 N.Y.S.2d 594 (1998). Similarly, the conduct may be annoying and harassing but still not extreme and outrageous. *Hernandez v. Cent. Parking Sys. of N.Y., Inc.,* 2008 N.Y. Misc. LEXIS 2228, *aff'm* as to dismissal of the cause of action for intentional infliction of emotional distress and modified on other grounds, 63 A.D.3d 411, 879 N.Y.S.2d 461, 2009 N.Y. App. Div. LEXIS 4121 (1st Dept. 2009). The speech alleged here did not meet these rigorous criteria as a matter of law. It may have allegedly hurt plaintiff's rather delicate feelings, but it did not violate all the norms of civilized society, especially when it is remembered that the defendants were doing their best to protest what they saw as a terrible wrong being committed by plaintiff that prevented a young woman from remarrying. Indeed, the speech complained of, having legitimate purpose and dealing with a matter of public concern, was protected by the First Amendment. We also submit that the allegations of negligent infliction of emotional distress fail to state a cause of action because they allege no duty that either of my clients had to plaintiff in that context.

Because of the aforementioned space limitation, I have not included all the bases my clients would include in a motion to dismiss the instant complaint. I thank Your Honor for His consideration of the foregoing and remain at the Court's disposal to respond to any questions.

Respectfully submitted,

ABRAMS, GORELICK, FRIEDMAN
& JACOBSON, LLP

**AGF&J** Abrams, Gorelick, Friedman & Jacobson, LLP
Attorneys At Law

Hon. Eric Komitee
November 17, 2025
Page 6

By: _____
Mark Ian Binsky

cc:
All appearing counsel
and parties pro se via
ECF